**Dennis J. DANNER and Pamela O. Danner, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CS–01–0143–JLQ.**

United States District Court, E.D. Washington.

April 26, 2002.

Dennis J. Danner, Spokane, WA, Pro se.

Pamela O. Danner, Spokane, WA, Pro se.

Frederick S. Wermuth, U.S. Department of Justice, Tax Division, Washington, DC, for United States of America.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT UNITED STATES OF AMERICA

QUACKENBUSH, Senior District Judge.

Before the court is the United States' Motion to Dismiss or, in the Alternative, for Summary Judgment (C.R.30), which was heard without oral argument on April 23, 2002. Plaintiffs **Dennis J. Danner and Pamela O. Danner** are proceeding pro se. Defendant **United States of America** is represented by **Frederick S. Wermuth**, United States Department of Justice, Tax Division.

For the following reasons, the Defendant's Motion is **GRANTED.**

### Background and Procedural History

This case involves a $500 tax penalty which the Internal Revenue Service (IRS) imposed on Plaintiffs pursuant to 26 U.S.C. § 6702 because Plaintiffs allegedly filed a frivolous income-tax return. The United States seeks to levy upon the Plaintiffs' property to collect the tax penalty pursuant to 26 U.S.C. § 6331. The Plaintiffs have petitioned this court to declare the basis for the levy action invalid. The procedural history of this matter may be summarized as follows.

On June 23, 1998, Dennis and Pamela Danner filed their 1997 Form 1040 joint federal income tax return with zeros entered on nearly every line of the return, including Line 38, which indicated zero taxable income. The only exceptions were Lines 54 and 60–62, which showed that $1,058 in federal income. tax had been withheld and that the Danners were claiming a refund of $1,058. (United States' Statement of Material Facts (C.R.33), Exhibit A (Declaration of Frederick S. Wermuth) at Exhibit 1). In contrast, the government's computerized records of the Danners' Forms W–2 and 1099 revealed that the Danners' 1997 income was at least $24,259. (C.R. 33 at 2).

Accompanying the Danners' 1040 Form, and submitted as part their return, was a two-page statement averring, *inter alia,* that "no section of the Internal. Revenue Code: 1) [e]stablishes an income tax 'liability' as, for example, Code Sections 4401, 5005, and 5703 do with respect to wagering, alcohol, and tobacco taxes; [or] 2) [p]rovides that income taxes have to be paid on the basis of a return—as, for example, Code Sections 4374, 4401(c), 5061(a), and 5703(b) do with respect to other taxes." (Declaration of Frederick S. Wermuth at Exhibit 1). The remainder of the statement set forth a dozen additional arguments as to why the Danners believed

that they were not liable for any income tax.

On August 6, 1998, the IRS sent the Danners a letter notifying them that their 1997 1040 Form was a frivolous return and offering them 30 days to correct the return to avoid a penalty. (*Id.*, Exhibit 3 at 1). The Danners did not correct their return.

Consequently, on November 12, 1999, the IRS issued the Danners a Statutory Notice of Deficiency recalculating their 1997 tax liability as $1,414. The calculation was based on unreported wages of $22,321, interest income of $58, and unemployment compensation of $1,880. (United States' Statement of Material Facts (C.R.33), Exhibit C (Declaration of Debra Brush), Exhibit 1 at 3). The government asserts that "it is certain that [the Danners] received the Statutory Notice because on January 5, 2000 they wrote a letter to the Internal Revenue Service, attention Deborah Decker, Customer Service Center, Ogden, Utah, titled 'In Re: Your Deficiency Notice Dated November 12, 1999.'" *Id.* The Danners did not file a petition with the United States Tax Court for a redetermination of the deficiency under 26 U.S.C. § 6213.

On February 21, 2000, the IRS sent notice to the Plaintiffs that they were being charged a $500 penalty under 26 U.S.C. § 6702 for filing a frivolous 1997 income-tax return. (United States' Statement of Material Facts (C.R.33), Exhibit B (Certificate of Official Record) at 8). The record also indicates that the government assessed the Danners' recalculated 1997 income tax on May 8, 2000. (C.R. 33, Exhibit C (Declaration of Debra Brush), Exhibit 1 at 3).

Subsequently, the IRS sent the Danners a letter captioned "Final Notice—Notice Of Intent To Levy And Notice of Your Right To A Hearing" on August 30, 2000. (Declaration of Frederick S. Wermuth, Exhibit 4). The letter recited that the gov-

ernment was giving notice of its intent to levy upon Plaintiffs' property under 26 U.S.C. § 6331 in order to collect the frivolous return penalty. The letter also informed the Danners of their right to request a Collections Due Process (CDP) hearing pursuant to 26 U.S.C. § 6330. The Notice Of Intent To Levy And Notice of Right To A Hearing form contained a footer with the words "Letter 1058(DO) (Rev.1–1999)." *Id.*

The Danners admit that they received the notice, but deny that "IRS Form 1058" is the correct Statutory Notice and Demand required to be provided under § 6331 of the Internal Revenue Code. (C.R. 21 at 5). Instead, the Danners claim that "IRS Form 17" is the proper Statutory Notice and Demand required to be provided under 26 U.S.C. § 6331. *Id.* In support of this claim, the Danners cite a Treasury Department document dated June 12, 1914, T.D. (Treasury Decision) 1995. (Memorandum in Opposition to the United States' Motion to Dismiss or, in the Alternative, for Summary Judgment (C.R.36), Plaintiff Exhibit 2 at 1). The Danners assert that T.D.1995 established Form 17 as the required Statutory Notice and Demand to be provided under 26 U.S.C. § 6331, and that T.D.1995 has never been revoked. (C.R. 36 at 11). The Danners have submitted Affidavits stating that they have not received "a statutory Form 17A, Notice and Demand for Payment." (C.R. 36, Plaintiff Exhibit 2 at 3A–3B). Nevertheless, on September 9, 2000, the Danners timely requested a CDP hearing pursuant to 26 U.S.C. § 6330, along with a request for production of a number of documents. (C.R. 21 at 2).

The IRS acknowledged the request for hearing in a letter dated September 20, 2000, and attempted to schedule a telephonic conference for October 11, 2000.

(Declaration of Debra Brush, Exhibit 1 at 4). The Danners rejected the proposed hearing in a letter dated October 4, 2000, in which they expressed outrage at the suggestion that a mere "telephone conference" would suffice; instead, the Plaintiffs demanded a face-to-face appeals conference. They also demanded a minimum of 60 days notice and ruled out holding the hearing during the period from December 1, 2000 to January 15, 2001. The IRS then offered to schedule the hearing in its Spokane Office on March 21, 2001 or April 5, 2001. Neither date was acceptable to the Danners. *Id.* at 4–5. Concluding that the Plaintiffs' primary purpose was to delay, on April 20, 2001, the IRS issued a determination letter, without having held a prior CDP hearing, *Id.* at 5.

The Plaintiffs then commenced the action herein on May 8, 2001. (C.R.1). In their complaint, the Danners petitioned this court to declare the determination of April 20, 2001 invalid and to order the IRS to conduct a Collections Due Process hearing pursuant to 26 U.S.C. § 6330. *Id.* at 4. The Danners also alleged that the government had improperly attempted to limit the scope of the CDP hearing so as to exclude argument regarding the Danners' underlying tax liability. *Id.* at 2. In addition, the Danners asked this court to order the IRS to produce documents establishing a chain of delegated authority from the Secretary of the Treasury to the IRS Appeals Officer assigned to their case. *Id.* at 4. However, before this court ruled on the merits herein, the parties entered into a stipulated agreement vacating the April 20, 2001 determination and remanding the case to the IRS Appeals Office for a CDP hearing on the collection issue. (Declaration of Debra Brush, Exhibit 1 at 5).

Appeals Officer Debra Brush conducted the Collections Due Process hearing in Spokane on October 24, 2001. In addition to the Plaintiffs, also present at the hearing were Charles Danner and Richard Bristol. At the outset, Plaintiffs asserted that Richard Bristol, to whom Plaintiffs had given their Power of Attorney, was Mr. Danner's brother. (C.R. 36, Written Transcript of Collection Due Process Hearing Conducted October 24, 2001 (Plaintiff Exhibit 3) at 7). Plaintiffs thereby asserted that it was their right under 5 U.S.C. § 500(d) to have Mr. Bristol represent them before the IRS as their attorney-in-fact. *Id.* at 3–4. The record indicates that Mr. Bristol was essentially permitted to represent the Plaintiffs throughout the proceedings. *Id.*

At the CDP hearing, the Plaintiffs offered a number of arguments as to why the frivolous return penalty should not be collected. Some of the Plaintiffs' arguments attacked the government's alleged failure to follow the procedural requirements of 26 U.S.C. § 6330, such as the statutory notice requirement. Others attacked the authority of the IRS to assess a frivolous return penalty under 26 U.S.C. § 6702. Still other arguments sought to attack the validity of Plaintiffs' underlying 1997 income-tax liability. *Id.*

It is apparent from the transcript of the hearing that the Appeals Officer found these arguments irrelevant and frivolous. At one point in the hearing, Mr. Bristol asked the Appeals Officer if a recommendation that the IRS proceed with the collection was a possible outcome. *Id.* at 14. The Appeals Officer replied, "It's a definite outcome ... unless I hear some arguments on why the frivolous return penalty [inaudible]." However, the Danners continued to press their attacks on the validity of their underlying income-tax liability. *Id.*

At the end of the hearing, Plaintiffs purported to offer the government a collection alternative—immediate payment of the frivolous return penalty—if the Ap-

peals Officer pointed to language in the United States Code which subjected them, in their view, to federal income-tax liability. *Id.* at 32–33. In response, the Appeals Officer stated that the only underlying tax liability at issue in the hearing was for the frivolous return penalty, the authority for which was set forth in 26 U.S.C. § 6702. *Id.* at 32–33. That response was unacceptable to Plaintiffs, and the CDP hearing was subsequently concluded. The IRS issued a letter of determination recommending appropriate enforced collection action on Dec. 17, 2001. (Declaration of Debra Brush, Exhibit 1 at 4).

Plaintiffs moved to reopen this action and amend their complaint on January 22, 2002. The United States did not oppose the motion. Accordingly, Plaintiffs' Amended Complaint alleged, *inter alia*, that Plaintiffs did not receive a fair Collections Due Process hearing; that notice of the CDP hearing was defective; that the IRS Appeals Officer was biased; that the procedure used to impose the frivolous return penalty was defective; that Defendant failed to comply with their requests for the production of documents; that the Appeals Officer ignored their offer of a viable collection alternative; and that the $500 frivolous return penalty was erroneously predicated on the government's recalculation of their underlying 1997 income-tax liability. (C.R. 29 at 2–8).

The court now turns to consideration of the merits of the United States' Motion.

### Analysis

This court has jurisdiction of the Plaintiffs' Amended Complaint under the IRS Restructuring and Reform Act of 1998, which allows an appeal to federal district court from an adverse IRS ruling arising from a Collections Due Process hearing, if the United States Tax Court does not have jurisdiction of the underlying tax liability. 26 U.S.C. § 6330(d)(1)(B). Under the In-

ternal Revenue Code, a tax penalty is itself considered to be a tax. 26 U.S.C. § 6671. Consequently, two distinct "underlying tax liabilities" are implicated herein: (1) the Danners' 1997 income-tax liability; and (2) the Danners' alleged liability for filing a frivolous 1997 tax return.

In general, the United States Tax Court has exclusive jurisdiction to determine the correctness of deficiency assessments made by the Commissioner of Internal Revenue, and may raise or lower an assessment or determine that there was no deficiency. *Peerless Woolen Mills v. Rose,* 28 F.2d 661, 662 (5th Cir.1928) (referring to powers of the Tax Court's predecessor body, the Board of Tax Appeals); *Brampton Woolen Co. v. Field,* 56 F.2d 23, 26–27 (1st Cir.1932) (holding that the jurisdiction of the Board of Tax Appeals is exclusive, and that District Courts are without jurisdiction of suit after appeal to the Board from a determination of additional deficiency tax).

In the case *sub judice,* the IRS issued a Statutory Notice of Deficiency recalculating the Danners' 1997 income-tax liability as $1,414. Consequently, the United States Tax Court, rather than this court, had exclusive jurisdiction of any appeal of underlying tax liability of type (1), the Danners' 1997 income-tax liability. The Danners were advised of their right under 26 U.S.C. § 6213 to petition the Tax Court for a redetermination of the income-tax deficiency, but they failed to do so. Thus, this court lacks subject matter jurisdiction as to matters related to the Danners' underlying income-tax liability.

Although the jurisdiction of the Tax Court extends to civil penalties that can be assessed and paid after the government gives notice of a deficiency to the taxpayer, its jurisdiction does not apply to those penalties which the government can

assess without notice of a deficiency. *Runtch v. Commissioner,* 30 TCM 856, 1971 WL 2281 (1971). Deficiency procedures do not apply to the assessment or collection of frivolous tax return penalties. 26 U.S.C. § 6703. Where the Tax Court lacks jurisdiction, the federal district court is empowered to review a determination arising from a Collections Due Process hearing. 26 U.S.C. § 6330(d)(1)(B). Accordingly, this court has jurisdiction to review matters related to underlying tax liability of type (2), the Danners' alleged liability for filing a frivolous tax return.

■ Section 6330(d) does not prescribe the standard of review the court should apply in reviewing administrative CDP determinations, but the standard of review is set forth in the legislative history of the provision. *Sego v. Commissioner,* 114 T.C. 604, 609, 2000 WL 889754 (2000). Where the validity of the underlying tax liability was properly at issue in the hearing, the standard of review is *de novo.* However, where the validity of the underlying tax liability was not properly at issue, the court will review the administrative determination for abuse of discretion. *Sego,* 114 T.C. at 610 (citing House Conference Report on the IRS Restructuring and Reform Bill of 1998).

The gravamen of the Plaintiffs' complaint is that they did not receive the fair hearing to which they were entitled under 26 U.S.C. § 6330(b). The Danners' challenge rests in part on the claim that the Appeals Officer improperly attempted to limit the scope of the hearing to a discussion of "collection alternatives." The transcript of the hearing indicates that the Danners basically attempted to reargue their obligation to pay income taxes. The Danners contend that under § 6330(c)(2)(B), they were entitled to be heard as to the validity of their underlying income-tax liability.

■ The Plaintiffs' argument is unsound. A taxpayer may raise a challenge to the existence of the underlying tax liability "if the person did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C. § 6330(c)(2)(B). However, the Danners did receive a notice of deficiency regarding their underlying income-tax liability. They also had an opportunity to dispute the income-tax deficiency before the Tax Court, but they did not do so. Thus, this court concludes as a matter of law that the Appeals Officer properly refused to hear arguments regarding the validity of Plaintiffs' underlying income-tax liability.

The Danners' related claim that the Appeals Officer was only willing to discuss collection alternatives for the frivolous return penalty is inaccurate. Early in the hearing, the Appeals Officer asked, "[W]hat would your position be on why your return shouldn't be considered a frivolous return and subject to that penalty?" (C.R. 36, Exhibit 3, at 7). Later, the Appeals Officer again asked, "What is your position regarding the $500 frivolous return penalty?" Still later, the Appeals Officer asked, "And so my question would be, ... why do you not feel that ... Mr. and Mrs. Danners' 1997 income tax return would be considered a frivolous return by the Internal Revenue Service?" *Id.* at 15. The transcript is simply devoid of any pertinent argument addressing the Plaintiffs' underlying liability for the frivolous return penalty.

■ An income tax return is frivolous if it contains information that on its face indicates that the self-assessment is substantially incorrect and is due to a position which is frivolous. 26 U.S.C. § 6702(a). The Danners filed their 1997 Form 1040 joint federal income tax return with zeros

on nearly every line of the return, including Line 38, which indicated zero taxable income. Lines 54 and 60–62 showed that $1,058 in federal income tax had been withheld and that the Danners were claiming a refund of $1,058. This information indicates that the Plaintiffs' self-assessment was substantially incorrect. In addition, the Danners' position has been based on frivolous arguments. Consequently, this court concludes as a matter of law that the Plaintiffs are liable for the $500 tax penalty pursuant to 26 U.S.C. § 6702.

The Appeals Officer also inquired at the outset of the hearing whether the Danners wanted to discuss any collection alternatives, such as an installment agreement. (C.R. 36, Exhibit 3, at 8). The only response was an illusory offer in which Plaintiffs purported to offer immediate payment of the frivolous return penalty—if the Appeals Officer identified language in the United States Code which subjected them, in their view, to federal income-tax liability. *Id.* at 32–33. The Appeals Officer properly declined. This court therefore concludes that declining the Plaintiffs' illusory offer of a "collection alternative" was not an abuse of discretion.

The Plaintiffs claim that they did not receive a fair hearing because the Appeals Officer allegedly was biased. In support of this claim, the Plaintiffs allege that when asked if a recommendation that the IRS proceed with collection was a possible outcome, the Appeals Officer replied, "It's a definite outcome." *Id.* at 14. This quotation takes the Appeals Officer's words entirely out of context, because the Plaintiffs fail to supply the remainder of the statement "unless I hear some arguments on why the frivolous return penalty [inaudible]." *Id.* The record contains no evidence of bias on the part of the Appeals Officer.

■ The Plaintiffs claim that they did not receive a fair hearing because the United States failed to comply with their requests for the production of documents. Under the Administrative Procedure Act, however, "[p]rocess, requirement of a report, inspection, or other investigative act or demand may not be issued, made, or enforced except as authorized by law." 5 U.S.C. § 555(c). Section 6330 does not provide authorization for production of documents or other investigative demands in connection with a Collections Due Process hearing. Hence, the Danners were not entitled to the production of documents from the IRS.

The Plaintiffs also claim that the Appeals Officer tried to disallow the participation of Richard Bristol in the CDP hearing. The transcript shows otherwise. The Appeals Officer allowed Mr. Bristol a great deal of latitude during the hearing to provide assistance to the Plaintiffs.

Finally, the Plaintiffs contend that the procedures used to impose the frivolous return penalty, such as the Statutory Notice and Demand issued to Plaintiffs, were defective. The Plaintiffs' contention is without merit.

In sum, the Plaintiffs have failed to raise a genuine issue of material fact and the United States is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States' Motion for Summary Judgment (C.R.30) is **GRANTED.**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Amended Complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED.** The Clerk is hereby directed to enter this Order and furnish copies to Dennis J. Danner, Pamela O. Danner, and counsel for the Defendant. The Clerk shall thereafter enter judgment for the Defendant and close this file.